Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM, PLLC**
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

*Counsel for Plaintiff and Putative Class*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBYN DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVOCADO MATTRESS, LLC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL) |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Robyn Davis ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Avocado Mattress LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

1.     Defendant Avocado Mattress LLC ("Defendant") manufactures, markets, and sells organic mattresses, bedding, and furniture products through its e-commerce website, avocadogreenmattress.com (the "Website").

2.     Defendant's business model relies heavily on price-comparison advertising to sell products. The products in question in this case are those that Defendant advertises for sale on its Website at prices listed alongside higher reference prices, with representations that the listed price represents a limited-time "sale" or a substantial discount (*e.g.*, "SAVE 10%") from the purportedly regular price (the "Products"). In reality, however, Defendant does not regularly sell, and has not recently sold, the Products at the higher prices that it lists on its Website alongside the purported "sale" or discounted prices for these Products. Rather, Products sold on Defendant's Website are either always or almost always offered at the purported "sale" or discounted prices, and either never or almost never at the higher anchor prices.

3.     The prices listed for Defendant's Products are thus false reference points intended to make the Products appear like unusually good, limited-time bargains at the advertised "sale" or discounted prices. In so doing, Defendant violates California's and the FTC's prohibitions on false advertising and misleading pricing.

4.     For the foregoing reasons, Plaintiff brings this action individually and on behalf of all consumers who, within the applicable statute of limitations period up to and including the date of judgment in this action, purchased Products from Defendant at prices that purported to represent discounts off of falsely represented  prices. Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs,

for: (1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (4) breach of contract; (5) breach of express warranty; (6) negligent misrepresentation; and (7) intentional misrepresentation.

## PARTIES

5.　Plaintiff Robyn Davis is a citizen of California and is domiciled in West Sacramento, California.

6.　Defendant Avocado Mattress LLC is a limited liability company incorporated in New Jersey that maintains its principal place of business at 12 Hudson Place, Suite 100, Hoboken, New Jersey 07030. Defendant is responsible for the promotion, advertising, and/or marketing of the Products and owns and operates the Website. Defendant sells – and, at all times during the Class Period, sold – the Products in California and has done business throughout California and the United States.

7.　Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including, without limitation, any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

8.　This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (a) the proposed Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) minimal diversity exists because at least one member of the proposed Class is a citizen of a state different from Defendant. Defendant sells mattresses directly to consumers nationwide via its Website.

9.　This Court has personal jurisdiction over Defendant because Plaintiff purchased Defendant's Products from her home in California and received the purchased Products from Defendant at her home in California, such that a substantial part of the events giving rise to Plaintiff's

claims occurred in California. Further, Defendant purposefully directed marketing and advertising of its Products into California, and purposefully made the statements and omissions concerning the prices of the Products at issue in this case to consumers in California, including to Plaintiff while she resided in and was present in California.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this judicial District and because a substantial part of the events giving rise to Plaintiff's claims took place in this judicial District.

## FACTUAL ALLEGATIONS

### A.    Introduction.

11.     Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they believe that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else. California law provides clear guidelines as to permissible and unlawful sales tactics.

12.     While there is nothing wrong with a legitimate sale, a fake one—that is, one with misleading regular prices and deceptive discounts—is illegal.

13.     Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale when it actually is not.

14.     Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, California's False Advertising Law also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

15.     In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or

misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

16. The Federal Trade Commission's regulations also prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

17. As numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

**B. Overview of Defendant's False Discounts.**

18. Defendant is a leading direct-to-consumer organic mattress manufacturer and retailer. Defendant owns and operates the website at avocadogreenmattress.com (the "Website"), through which it sells purportedly discounted products (the "Products") to consumers.

19. Specifically, on its Website, Defendant creates the false impression that its Products' regular prices are higher than they truly are. At any given time, Defendant advertises discounts on its Products. These discounts offer a stated percentage (*e.g.*, "SAVE 10%") or dollar amount (*e.g.*, "SAVE $100") off the Products, or include a higher price representing the purported regular price alongside a discounted price. Sometimes these discounts are offered to consumers who use a coupon code that is prominently advertised on Defendant's Website. Defendant also distributes similar coupon codes via its marketing emails or product review websites (*e.g.*, US News 360 Reviews) that offer a similar percent or dollar amount off mattresses when applied via Defendant's Website. Although Defendant's purported sales are always changing, one thing remains constant—they are perpetually available.

20.     Each of these promotions implies that the discount is tied to a specific time frame or event and that after the event, the price may go back up. However, as soon as one purported sale period ends, another begins.

21.     Defendant's supposed discounts are often automatically shown without the need to enter a code. And when Defendant does use discount codes for its sales, they are so prominently advertised on the product pages and other website pages that the vast majority of consumers use them.

22.     To confirm that Defendant nearly always offers discounts off of purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1] That investigation confirms that Defendant consistently offers persistent, purported limited-time sales on its Website:

| Date of Capture | Claim Made |
| --- | --- |
| Jan 15, 2023 | "New Year Sale" — SAVE UP TO $200 ON CERTIFIED ORGANIC MATTRESSES |
| Feb 16, 2023 | "Sleep Organic!" — SAVE 10% SITEWIDE! |
| Mar 13, 2023 | "Sleep Organic!" — SAVE UP TO $300 OFF MATTRESSES |
| Apr 16, 2023 | "Sleep Organic!" — SAVE UP TO $880 ON MATTRESSES |
| May 16, 2023 | "Sleep Organic!" — CERTIFIED ORGANIC MATTRESSES – UP TO 2 PILLOWS FREE |
| Jun 16, 2023 | "Sleep Organic!" — CERTIFIED ORGANIC MATTRESSES — UP TO $800 OFF! |
| Jul 16, 2023 | "Sleep Organic!" — CERTIFIED ORGANIC MATTRESSES — UP TO $400 OFF! |
| Aug 15, 2023 | "Sleep Organic!" — CERTIFIED ORGANIC MATTRESSES — UP TO 30% OFF! |

[1] https://web.archive.org searching the following URL  https://www.avocadogreenmattress.com/

| Date of Capture | Claim Made |
| --- | --- |
| Sep 16, 2023 | "Sleep Organic!" — CERTIFIED ORGANIC MATTRESSES — UP TO $800 OFF! |
| Oct 16, 2023 | "Organic Sale!" — CERTIFIED ORGANIC MATTRESSES UP TO $800 OFF! + Save up to $1,622 with Bundles! |
| Nov 16, 2023 | "Save Up to 20%" — BLACK FRIDAY SALE ON CERTIFIED ORGANIC MATTRESSES + Up to $1,360 Off Mattresses! |
| Dec 16, 2023 | "Save Up to 30%" — BEST DEALS EVER ON CERTIFIED ORGANIC MATTRESSES & FURNITURE |
| Jan 15, 2024 | "Sleep Organic!" — CERTIFIED ORGANIC MATTRESSES — UP TO $800 OFF! + Save up to $800 on Mattresses! |
| Feb 15, 2024 | "Sleep Organic!" — UP TO 20% OFF! + Save up to $1,360 on Mattresses! |
| Mar 14, 2024 | "Sleep Organic!" — UP TO $800 OFF + UP TO $800 OFF MATTRESSES! |
| Apr 15, 2024 | "Earth Month Sale" — SAVE UP TO 15% ON CERTIFIED ORGANIC MATTRESSES |
| May 15, 2024 | "Memorial Day Sale" — CERTIFIED ORGANIC MATTRESSES — UP TO 20% OFF + Up To $2,200 Off! |
| Jun 16, 2024 | "Sleep Organic" — CERTIFIED ORGANIC MATTRESSES ON SALE UP TO $500 OFF! + Organic Mattresses on Summer Sale! |
| Jul 17, 2024 | "Organic Sale" — SAVE UP to $1100 ON CERTIFIED ORGANIC MATTRESSES + Organic Mattresses are even Cooler on Sale! |
| Aug 16, 2024 | "Organic Sale" — SAVE UP to $1540 ON CERTIFIED ORGANIC MATTRESSES + Organic Mattress Labor Day Sale! |
| Sep 16, 2024 | "Fall Mattress Sale!" (CSS render failed; text confirmed active sale) |
| Nov 1, 2024 | "Organic Sale" — SAVE UP to $1,540 ON CERTIFIED ORGANIC MATTRESSES + Veterans Day Mattress Sale! |
| Nov 16, 2024 | "Organic Sale" — SAVE UP to $1,540 ON CERTIFIED ORGANIC MATTRESSES + Black Friday Sitewide Sale! |
| Dec 13, 2024 | "Holiday Sale!" — SAVE UP to 15% ON CERTIFIED ORGANIC MATTRESSES + Holiday Mattress Sale! |

| Date of Capture | Claim Made |
|---|---|
| Jan 16, 2025 | "Luxury Sale" — SAVE UP TO $500 ON CERTIFIED ORGANIC MATTRESSES + Upgrade to Luxury Mattress Sale! |
| Feb 14, 2025 | "Presidents' Day Mattress Sale!" — SAVE UP TO 20% ON CERTIFIED ORGANIC MATTRESSES |
| Mar 13, 2025 | "Organic Mattress Sale!" — SAVE 10% ON OUR CERTIFIED ORGANIC GREEN MATTRESS |
| Apr 17, 2025 | "Sleep Organic" — SAVE 10% ON CERTIFIED ORGANIC MATTRESSES + Buy Now - Before Prices Go Up |
| May 18, 2025 | "Sleep Organic" — TAKE 10% OFF CERTIFIED ORGANIC MATTRESSES, BEDDING & FURNITURE + Special Memorial Day Offers |
| Jun 15, 2025 | "Sleep Organic" — SAVE UP TO $300 ON CERTIFIED ORGANIC MATTRESSES + Summer Mattress Sale |
| Jul 16, 2025 | "Comfort is Organic" — CERTIFIED ORGANIC MATTRESSES — SAVE UP TO $500 + Summer Refresh Mattress Sale! |
| Aug 14, 2025 | "Organic Comfort" — CERTIFIED ORGANIC MATTRESSES — SAVE UP TO 20% + Labor Day Mattress Sale! |
| Sep 14, 2025 | "Organic Comfort" — CERTIFIED ORGANIC MATTRESSES — SAVE UP TO 20% + Fall Mattress Sale! |
| Oct 9, 2025 | "Organic Comfort" — CERTIFIED ORGANIC MATTRESSES — SAVE UP TO 15% + Autumn Slumber Mattress Sale! |
| Nov 13, 2025 | "Comfort & Joy" — CERTIFIED ORGANIC MATTRESSES — SAVE UP TO 20% + Black Friday Sale! |
| Dec 15, 2025 | "Comfort & Joy" — CERTIFIED ORGANIC MATTRESSES — SAVE 10% + Holiday Sale! |
| Jan 6, 2026 | "Comfort & Joy" — SAVE 10% + Holiday Sale! |
| Jan 23, 2026 | "Comfort is Organic" — SAVE UP TO 15% + New Year Mattress Sale! |
| Feb 15, 2026 | "Organic for All!" — CERTIFIED ORGANIC MATTRESSES — SAVE UP TO 20% + Presidents' Day Mattress Sale! |
| Feb 27, 2026 | "Organic for All!" — CERTIFIED ORGANIC MATTRESSES — SAVE UP TO 20% + Presidents' Day Mattress Sale! |

**C.    Defendant's Products' Purported Regular Prices Were Not the Prevailing Prices During the 90 Days Preceding the Discounts.**

23.    Defendant's use of inflated reference prices is particularly misleading in practice because it is not apparent to consumers that the price may not reflect a bona fide former or regular selling price within the statutorily relevant lookback period.

24.    Specifically, Defendant's pricing for the Products was not the prevailing price during the 90 days preceding the advertisement of the purported discounts.

25.    Defendant's purported discounts are deceptive because they misrepresent: (a) the product's prevailing market price; (b) the product's value; (c) the size of the discount; and (d) the time-limited nature of the deal.

26.    As a result of this scheme, Defendant creates the false impression that consumers are receiving substantial discounts off legitimate former prices, when in reality consumers are often paying prices that are routinely available, and the reference prices function as misleading anchors rather than true former prices.

27.    Moreover, at other retailers, Defendant's mattresses are not generally sold at the purported regular prices, and are instead sold at the same discounted prices Defendant offers on its Website. For example, the Avocado Green Mattress (Firm King) has been offered on Defendant's Website at a supposedly discounted price—and competing retailers such as Pottery Barn and the Bed Store have simultaneously offered the identical mattress at the same supposedly discounted price, not at the purported regular price. This is no accident—these other retailers compete with Defendant for online sales, so they match the actual price on Defendant's own Website, not an arbitrary purported regular price. Defendant is similarly not regularly selling at its own purported regular prices in its retail stores.

**D.    Defendant's Conduct Violates California's Ban on False Sales.**

28.    California Business and Professions Code § 17501 prohibits advertising a "former" price unless the alleged former price was the prevailing market price within the preceding three

months, or unless the advertisement clearly and conspicuously states when the former price prevailed. Defendant's advertising violates California Business and Professions Code § 17501 because the Products' struck-through reference prices are presented as former prices but are not the prevailing prices during the required lookback period, and Defendant does not clearly disclose when—if ever—the struck-through prices actually prevailed.

29.    Defendant's advertising also violates California's False Advertising Law (Bus. & Prof. Code § 17500) because the struck-through prices, discount representations, and sale representations are untrue and misleading.

30.    Similarly, Defendant's advertising violates the CLRA (Civ. Code § 1770) because Defendant makes false or misleading statements about the existence and amount of price reductions, and advertises goods with the intent not to sell them as advertised—i.e., not to sell them at the struck-through reference prices in any meaningful, time-bound way.

31.    Finally, Defendant's conduct also violates California's Unfair Competition Law (Bus. & Prof. Code § 17200) because its conduct is unlawful, unfair, and fraudulent.

## E.    Defendant's Deceptive Pricing Harms Consumers.

32.    Defendant's false discounts harm consumers by misrepresenting price and value, inducing purchases that consumers would not otherwise make, and causing consumers to pay more than they otherwise would.

33.    A reasonable consumer attaches importance to Defendant's discounts, which imply savings and often trigger an urgent desire to buy now rather than later (to avoid missing out). As studies have found, "[n]early two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3] Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

34.     Defendant's scheme deprives consumers of the benefit of truthful pricing information. It prevents consumers from accurately evaluating: (a) whether they are actually receiving a good deal; (b) whether to wait; (c) whether to comparison shop; and (d) whether the product is worth the price.

35.     Defendant's deceptive "discount" advertising also distorts the market by artificially increasing demand—because consumers are drawn to what they believe are unusually good deals.

36.     In short, Defendant's conduct injured Plaintiff and the Class members by: (a) inducing purchases that would not have occurred; (b) causing consumers to pay a price premium; and/or (c) causing consumers to accept products of lower market value than represented by Defendant's reference prices.

## F.   Plaintiff's Individual Experience.

37.     On November 30, 2023, Ms. Davis purchased an Eco Organic Mattress (Twin) from Defendant's Website, avocadogreenmattress.com. At the time, Defendant was advertising a purported discount on its Products. Defendant listed the purported regular price of the Eco Organic Mattress as $777.00 and advertised a discounted price of $699, representing a 10% discount of $77.70. As a result, Ms. Davis believed that she was receiving a substantial discount from the advertised regular price, and that she was purchasing during a time-limited sale.

38.     Prior to making her purchase on November 30, 2023, Ms. Davis reviewed Defendant's Website and saw that Defendant was advertising substantial, time-limited discounts. Plaintiff read and relied on Defendant's representations that the Eco Organic Mattress had a regular price of $777.00, that she was receiving a discount of $77.70, and that the sale was limited in time. Based on these representations, Ms. Davis believed she was receiving the Eco Organic Mattress at a discount from its true regular price, and that the discount would not always be available. The webpage that Ms. Davis reviewed is depicted below.[2]

---

[2] https://web.archive.org/web/20231118071438/https://www.avocadogreenmattress.com/collections/mattresses/products/best-organic-affordable-mattress-eco-organic (last accessed April 7, 2026).









39.    In the order confirmation that Defendant provided to Ms. Davis after she made her purchase, with the same layout as what Ms. Davis saw and relied upon on the checkout page, Defendant represented that the Eco Organic Mattress had a regular price of $777.00 and that Ms. Davis was receiving a discount of $77.70.



Eco Organic Mattress
Twin                                                     ~~$777.00~~
Production Time: Ready to ship in 1 - 3                  $699.30
business days
🏷 DISCOUNT (-$77.70)

40.    Like other reasonable consumers, Ms. Davis expected the advertised discount to be based on the actual regular sales price of the mattress. She reasonably believed that the $777.00 price represented the regular, former price of the product—the price at which Defendant usually sold the Eco Organic Mattress before the time-limited promotion went into effect.

41.    In truth, however, as described above, Defendant's Products, including the Eco Organic Mattress that Ms. Davis purchased, were almost always available at a discounted price off of the purported regular prices. In other words, Defendant did not regularly sell the Eco Organic Mattress—or any Product—at the purported regular price, and the Products were not discounted as advertised. Plus, the sale was not limited time—Defendant's Products are nearly always on sale. An investigation[3] of the product's listing three months prior to and after Plaintiff's purchase confirms this:

| Date of Capture | Claim Made |
| --- | --- |
| Aug 19, 2023 | Twin listed at $777; description states "starting at $699 with code LABORDAY!" Banner: "UP TO 1 YEAR MATTRESS TRIALS" |
| Sep 24, 2023 | Twin listed at $799 (price increase); description states "starting at $699 with code FALL100!" Banner: "Up to $800 Off Mattresses!" |
| Oct 19, 2023 | Twin listed at $777 (price back down); description states "starting at $699 with code HOLIDAY!" Banner: "Save up to $1,622 with Bundles!" |
| Nov 20, 2023 | Twin listed at $777; description states "starting at $699 with code HOLIDAY!" Banner: "Best Mattress Sale of the Year: Up to $1,360 Off Mattresses!" |
| Dec 2023 | No separate capture available (redirects to Nov 20 capture) |
| Jan 29, 2024 | Twin listed at $699 (red) with $777 (strikethrough); "NEW YEAR SALE" badge on product image; description states "starting at $699!" Banner: "Save up to $800 on Mattresses!" |
| Feb 20, 2024 | Twin listed at $699 (red) with $777 (strikethrough); description states "starting at $699!" Banner: "Save up to $1360 on Mattresses!" |

---

[3] Using the Internet Archive's Wayback Machine for the following URL: https://www.avocadogreenmattress.com/products/best-organic-affordable-mattress-eco-organic

42.     At the time Ms. Davis purchased the Product on November 30, 2023, she did not know that Defendant's sales were not real or that the discounts were fake. Nor did she have any reason to suspect that the sales were fake when she purchased the Product. Indeed, at the time of Ms. Davis's purchase, Defendant had not yet added the fine-print asterisk disclaimer that it would later affix to its reference pricing—making the fake sale representations even more baldly deceptive as to Ms. Davis at the time of her purchase.

43.     Ms. Davis faces an imminent threat of future harm. She would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Ms. Davis has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Accordingly, she is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

44.     Ms. Davis read and relied on Defendant's representations on Defendant's Website, specifically that the Products she purchased were being offered at a discount for a limited time and had the regular prices listed above. Based on Defendant's representations, Ms. Davis reasonably understood that Defendant regularly sold the Products at the published regular prices, that these regular prices were the market value of the Products that she was buying, that she was receiving the advertised discounts as compared to the regular prices, and that the advertised discounts were not almost always available. She would not have made the purchases, or she would have paid less for them if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discounts.

**G.     No Adequate Remedy at Law.**

45.     For her equitable relief claims, Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Classes are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is

different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL and UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

46.     Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Products are determined to be an amount less than the total expenditure in connection with the Products. Without compensation for the full price of the Product, Plaintiff would be left without the parity in purchasing power to which she is entitled.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as follows (collectively, the "Classes"):

**The Nationwide Class:** All persons in the United States who, within the applicable statute of limitations period, purchased one or more Products advertised at a discount on Defendant's Website (the "Nationwide Class").

**The California Subclass:** All members of the Nationwide Class who, while in the state of California, purchased one or more Products advertised at a discount on Defendant's Website (the "California Subclass").

48.     Specifically excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

49.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

50.     ***Numerosity.***   The Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, the Classes comprise at least millions of consumers.  The precise number of the members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery.  The members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

51.     ***Commonality and Predominance.***   Common questions of law and fact exist as to all the members of the Classes and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's Products were sold at the strikethrough reference price within 90 days of Plaintiff and the Class members' purchases; (b) whether Defendant's sitewide discounts were genuine; (c) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (d) whether Defendant's conduct alleged herein breached Plaintiff's and the Class members contracts and express warranties; (e) whether Plaintiff and the Class members are entitled to damages and/or restitution; (f) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (g) whether Plaintiff and the Class members are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

52.     ***Typicality.***   The claims of Plaintiff are typical of the claims of the members of the Classes because, like other members of the Classes, she purchased one of the Products relying on the representations and omissions made by Defendant that the Product was being sold at a discount from its false reference pricing.

53.     ***Adequacy***.  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has no interests antagonistic to the Classes' interests, and Plaintiff has retained counsel that has considerable experience and success in prosecuting complex class actions and consumer-protection cases.

54.    ***Superiority.***  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

55.    Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

56.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and the Classes and will likely retain the benefits of its wrongdoing.

57.    Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## CAUSES OF ACTION

### COUNT I
**Violation of California's False Advertising Law
Cal. Bus. & Prof. Code §§ 17500 & 17501 et seq.
(On Behalf of Plaintiff and the California Subclass)**

58.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

59.    Plaintiff brings this claim individually and on behalf of the California Subclass.

60.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class Members.

61.    As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, $777.00) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised as reference anchors from which time-limited discounts are calculated to denote "former" prices, *i.e.*, the prices that Defendant charged before the time-limited discount went into effect.

62. The prices advertised by Defendant are not Defendant's regular prices. In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is always or almost always a heavily-advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are limited time are false and misleading.

63. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

64. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decisions.

65. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

66. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass.

67. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

68.    For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendant's unlawful conduct.

**COUNT II**
**Violation of California's Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

69.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

70.    Plaintiff brings this claim individually and on behalf of the California Subclass.

71.    Plaintiff and the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

72.    Plaintiff and the California Subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

73.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

74.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to Class Members by using fake regular prices (i.e., regular prices that are not the prevailing prices) and by advertising fake discounts.

75.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

76.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

77. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

78. Defendant violated, and continues to violate, section 1770(a)(13) of the California Civil Code by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its Website, including by (1) misrepresenting the regular price of Products on its Website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusual, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Labor Day Sale," when in fact the sale is ongoing and not limited to Labor Day).

79. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

80. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decisions.

81. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

82. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass.

83. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

84.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

85.     In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on April 1, 2026, informing Defendant of her intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

## COUNT III
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200 et seq.
### (On Behalf of Plaintiff and the California Subclass)

86.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

87.     Plaintiff brings this claim individually and on behalf of the California Subclass.

88.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

**The Unlawful Prong**

89.     Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1); 15 U.S.C. § 52(a). As the FTCA's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1; 16 C.F.R. § 233.3.

**The Deceptive Prong**

90.　As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the consumers were receiving discounts were false and misleading.

91.　Defendant's representations were misleading to Plaintiff and other reasonable consumers.

92.　Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

**The Unfair Prong**

93.　As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

94.　Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

95.　The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer pricing only injures healthy competition and harms consumers.

96.　Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

* * *

97.　For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendant's representations were a substantial factor in Plaintiff's purchase decisions.

98.　In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

99. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class Members.

100. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

101. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## COUNT IV
**Breach of Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

102. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

103. Plaintiff brings this claim individually and on behalf of the Nationwide Class.

104. Plaintiff and Class Members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's Website.

105. The contracts provided that Plaintiff and Class Members would pay Defendant for the Products ordered. The contracts further required that Defendant provide Plaintiff and Class Members with Products that have a market value equal to the regular prices displayed on the Website. They also required that Defendant provide Plaintiff and Class Members with the discount advertised on the Website and listed in the receipt. These were specific and material terms of the contract.

106. Plaintiff and Class Members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

107. Defendant breached the contracts with Plaintiff and Class Members by failing to provide Products that had a market value equal to the regular price displayed on its Website, and by failing to provide the promised discount. Defendant did not provide the discount that Defendant had promised.

108. Plaintiff provided Defendant with notice of this breach of contract by mailing a notice letter to Defendant's headquarters and to Defendant's registered agent on April 1, 2026.

109. As a direct and proximate result of Defendant's breaches, Plaintiff and Class Members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

110. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Nationwide Class as a result of Defendant's unlawful conduct.

**COUNT V**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class)**

111. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

112. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law, or, in the alternative, on behalf of the respective express warranty laws of the Nationwide Class, which are substantially similar to California's express warranties.[4]

---

[4]While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2 313; Ga. Code § 11-2-313; HRS § 490:2- 313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2 313; Neb. Rev. Stat. § 2- 313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2 313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified

113. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's Website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

114. This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

115. In fact, the stated market value of the Products was not their true market value. Thus, the warranty was breached.

116. Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Products if they had known that the warranties were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranties, and/or (c) they did not receive the Products as warranted that they were promised.

117. For the breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Nationwide Class as a result of Defendant's unlawful conduct.

### COUNT VI
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Class)**

118. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

119. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law, or, in the alternative, on behalf of the respective state laws of the Nationwide Class, which are substantially similar to California's negligent misrepresentation laws.

120. As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the Nationwide Class concerning the Products' discounts and reference prices.

---

Laws, § 57A 2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46- 2-313; and Wyo. Stat. § 34.1-2-313.

121. These representations were false.

122. When Defendant made these misrepresentations, it knew or should have known that they were false or misleading. Defendant had no reasonable grounds for believing that these representations were true when made.

123. Defendant intended that Plaintiff and Nationwide Class members rely on these representations and Plaintiff reasonably relied on them.

124. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to purchase the Products.

125. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Nationwide Class members.

126. Plaintiff and the members of the Nationwide Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because they were sold at a price premium due to the misrepresentations, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

127. For the negligent misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Nationwide Class as a result of Defendant's unlawful conduct.

## COUNT VII
### Intentional Misrepresentation
### (On Behalf of Plaintiff and the Nationwide Class)

128. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

129. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law, or, in the alternative, on behalf of the respective state laws

of the Nationwide Class, which are substantially similar to California's intentional misrepresentation laws.

130. As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the Nationwide Class concerning the Products' discounts and reference prices.

131. These representations and material omissions of fact were false and misleading.

132. When Defendant made these misrepresentations, it knew that they were false and misleading at the time they were made and/or Defendant acted recklessly in making the misrepresentations.

133. Defendant intended that Plaintiff and Nationwide Class members rely on these representations and Plaintiff reasonably relied on them.

134. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to purchase the Products.

135. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Nationwide Class members.

136. Plaintiff and the members of the Nationwide Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because they were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

137. For the intentional misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Nationwide Class as a result of Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.  For an order certifying the Classes and naming Plaintiff as a representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

b.  For an order declaring Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.  For actual, expectation, reliance, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For rescission, restitution and all other forms of equitable relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: April 7, 2026                                Respectfully submitted,


By:    /s/ Adrian Gucovschi
       Adrian Gucovschi (SBN 360988)

       **GUCOVSCHI LAW FIRM, PLLC.**
       165 Broadway, 23rd Floor
       New York, NY 10006
       Telephone: (212) 884-4230
       Facsimile: (212) 884-4230
       E-Mail: adrian@gucovschilaw.com

       **-and-**

       **HEDIN LLP**
       Frank S. Hedin (SBN 291289)
       1395 Brickell Ave., Suite 610
       Miami, Florida 33131-3302
       Telephone: (305) 357-2107

Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com


*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adrian Gucovschi, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Gucovschi Law Firm, PLLC, counsel of record for Plaintiff Robyn Davis in this action.  Plaintiff Robyn Davis alleges that she is a citizen of California who resides in West Sacramento, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant regularly does business in the Eastern District of California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injuries as alleged herein, have occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, this 7th day of April, 2026.


 */s/ Adrian Gucovschi*
Adrian Gucovschi

---